UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------X
                                                    :
EMPIRE ASSET MANAGEMENT                :
COMPANY,                                               :
                                                  :
                    *Petitioner*,                :         21-CV-4542 (PAC)
                                                  :
      -against-                          :
                                                 :         **OPINION & ORDER**
JOSEPH BEST,                                      :
                                                 :
                    *Respondent*.            :
                                               :
------------------------------------------------------------X

In April 2021, Respondent Joseph Best initiated arbitration proceedings against Petitioner Empire Asset Management Company, alleging fraud and fiduciary duty violations with respect to the handling of his brokerage account. Shortly thereafter, Empire filed a petition in New York State Supreme Court requesting (1) a Temporary Restraining Order (TRO) staying the arbitration proceedings, and (2) dismissal of Best's claims on statute of limitation grounds. The state court granted the TRO application and stayed the arbitration proceedings.

On May 20, Best removed the state court action to federal court based on diversity jurisdiction. He now moves to dismiss this action pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, contending that, under the parties' arbitration agreement, Empire's statute of limitations defense must be decided by the arbitrator, and not this Court. For the reasons set forth below, the motion is **GRANTED**.

1

## BACKGROUND

The following facts are drawn from the Complaint and assumed true for purposes of this motion.[1] Respondent Joseph Best is a resident of Georgia who, in 2013, opened a brokerage account with Petitioner Empire Asset Management Company. (Compl. ¶¶ 2, 7, ECF 1-1.) Empire is a limited liability company that is based in New York. (*Id.* at ¶ 2.)

Like many retail customers in the industry, when Best created his Empire brokerage account, he was required to sign a standard agreement which set forth the terms of his contractual relationship with Empire. (*Id.* at ¶¶ 7–8.) That agreement contained three provisions that are of concern in this motion. (Customer Agreement, at 6–7, ECF 1-1.)

*First*, the agreement contained a Choice of Law provision, which states that "any claim, controversy or dispute arising under or related to this agreement, the relationship of the parties, and/or the interpretation and enforcement of the rights and duties of the parties will be governed by the laws of the State of New York without regard to any conflicts of law principles." (*Id.* at 6.)

*Second*, the agreement contained an Arbitration Clause, which provides in relevant part:

> By signing this agreement you and the clearing agent group agree, that controversies arising under or relating to any activity or this agreement . . . shall be determined by arbitration and in accordance with the rules of the Financial Industry Regulatory Authority, Inc. ("FINRA") before an arbitration panel appointed by FINRA in accordance with its rules and such hearing or hearings shall be conducted in a locale selected by FINRA.

(*Id.* at 7.)

---

[1] On this motion to dismiss, the Court may consider documents that are attached as exhibits, incorporated by reference, or integral to the complaint. *See Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002).

*Third*, notwithstanding the Arbitration Clause, the agreement contained a Provisional Remedy Clause, which states that either party could seek "temporary or provisional relief or remedy" in the Southern District of New York or New York State Supreme Court. (*Id.*)

During the course of their contractual relationship, a dispute arose between the parties. On April 9, 2021, Best filed a Statement of Claim with the Financial Industry Regulatory Authority (FINRA), alleging that Empire and Empire's representatives "engaged in egregious churning and excessive trading" and other "fraudulent activity" which purportedly caused "over $2.8 million dollars in losses" to him. (Compl. ¶ 4; FINRA Action, at 1, ECF 1-1.) In response, Empire filed a petition and TRO application in New York State Supreme Court. (TRO Application, at 1–3, ECF 1-1.) Empire's state action requested a stay of the FINRA proceedings and dismissal of Best's claims on the grounds that they were barred by the relevant statute of limitations. (Compl. ¶¶ 33–34.) On April 28, the state court granted Empire's TRO application and stayed the FINRA arbitration proceedings. (TRO Application, at 1–3.) On May 20, Best removed the state action to federal court on the basis of diversity jurisdiction. (ECF 1.)

On June 22, the Court convened a pre-motion conference with the parties. (Min. Entry dated June 22, 2021.) There, the Court concluded that removal was proper under 28 U.S.C. §§ 1441 and 1446(a) because it was timely made, there was complete diversity between the parties, and the amount in controversy exceeded $75,000. (Pre-motion Conf. Tr. at 11.) In addition, the Court also found that the state court TRO, which was entered on April 28, had expired under the Supreme Court's decision in *Granny Goose Foods, Inc. v. Bhd. of Teamsters & Auto Truck*

*Drivers Loc. No. 70 of Alameda Cty.*, 415 U.S. 423, 439–40 (1974).[2] (*Id.* at 6.) Finally, the Court granted Best leave to file a motion to dismiss and set an expedited briefing schedule on the motion given the arbitrability issues raised therein. (*Id.* at 12–14.)

Best now moves to dismiss this case pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. The motion is fully briefed. For the following reasons, the motion is granted.

## DISCUSSION

**I.** **Legal Standard**

To survive a motion to dismiss pursuant to Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

When considering a Rule 12(b)(6) motion, the district court accepts as true all of the factual allegations contained in the complaint and draws all reasonable inferences in the non-movant's favor. *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007). That tenet, however, "is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678. Thus a pleading

---

[2] In *Granny Goose*, the Supreme Court held that, "An *ex parte* temporary restraining order issued by a state court prior to removal remains in force after removal no longer than it would have remained in effect under state law, but in no event does the order remain in force longer than the time limitations imposed by Rule 65(b), measured from the date of removal." 415 U.S. at 439–40. Because this case was removed on May 20, the latest the TRO could remain in effect, under *Granny Goose*, was 14 days following removal. *See id.* Accordingly, the Court found that the TRO had dissolved well in advance of the June 22 pre-motion conference.

that offers only "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.

## II. **Arbitrability of Empire's Timeliness Defense**

The determinative issue on this motion is whether Empire's statute of limitations defense is arbitrable. Best argues that, under the terms of the parties' agreement, Empire's timeliness defense is subject to arbitration. (Best Br. at 1, ECF 8.) Empire responds that the parties never intended to arbitrate its timeliness defense and thus the Court, and not the arbitrator, should resolve the merits of its statute of limitations defense. (Empire Br. at 2–3, ECF 11.) The Court concludes that Best has the better of the argument.

### A. **Applicable Law**

The Supreme Court has recognized that "arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83 (2002) (cleaned up). Thus, "whether the parties intended at the time of contracting to have issues of timeliness determined by the arbitrator" is a matter of contract interpretation subject to "state-law principles." *Bechtel do Brasil Construcoes Ltda. v. UEG Araucaria Ltda.*, 638 F.3d 150, 154 (2d Cir. 2011); *see Howsam*, 537 U.S. at 83.

Issues of arbitrability, however, also implicate a federal policy that is reflected in the Federal Arbitration Act (FAA). *See Bechtel*, 638 F.3d at 154. "The principal purpose of the FAA is to ensure that private arbitration agreements are enforced according to their terms." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 344 (2011) (cleaned up). In recognition of this federal policy, the Second Circuit has instructed courts to "construe the parties' intentions generously in favor of arbitrability." *Bechtel*, 638 F.3d at 154. "[A]ny ambiguity in the contract

5

must be resolved in favor of arbitration." *Id.*

    B.    **Application**

Applying these principles, the Court concludes that Empire's statute of limitations defense is a question of law committed to the arbitrator, and not this Court.

*First*, the text of the Arbitration Clause speaks broadly and generously in committing all controversies that arise under the parties' agreement to arbitration. (Customer Agreement, at 7.) "[C]ontroversies arising under or relating to any activity or this agreement," the Arbitration Clause says, "shall be determined by arbitration" before FINRA. (*Id.*) Construing these terms in accordance with common parlance, it is hard pressed to argue, as Empire does, that the Arbitration Clause is limited in application or that it carves out certain "substantive eligibility issues" such as a statute of limitations defense. *PaineWebber Inc. v. Bybyk*, 81 F.3d 1193, 1199 (2d Cir. 1996). Instead, the definitive character of these terms, coupled with their capacious qualifiers, leave no doubt as to the Arbitration Clause's broad scope and inexorable command to arbitrate any and all issues flowing from the parties' agreement. *Bechtel*, 638 F.3d at 154. Or to put the matter more simply, the "wording is inclusive, categorical, unconditional and unlimited," thereby demonstrating the parties' clear intent to arbitrate timeliness defenses of the kind at issue here. *Id.*

*Second*, the Arbitration Clause also provides that FINRA's procedural rules will govern the conduct of arbitration proceedings. (Customer Agreement, at 7.) The Second Circuit in turn has said that procedural rule provisions, such as this one, provide an additional clue as to the parties' intent to arbitrate timeliness issues. *Cf. Bechtel*, 638 F.3d at 154 (finding a procedural rule provision stating that New York law governs created ambiguity with respect to arbitrability

of timeliness issues).³

*Finally*, general principles of contract interpretation cut in favor of Best's reading of the Arbitration Clause. In *Mastrobuono v. Shearson Lehman Hutton, Inc.*, 514 U.S. 52 (1995), the Supreme Court explained that arbitration clauses are subject to the "common-law rule of contract interpretation that a court should construe ambiguous language against the interest of the party that drafted it." *Id.* at 62. Here, Empire drafted the boilerplate Arbitration Clause at issue and clearly reflected in its terms the parties' intent to arbitrate any controversy arising from the parties' contractual relationship. (Customer Agreement, at 7.) Under basic notions of fairness and equity, then, Empire should be held to its word and proscribed from evading the consequences of its own bargain. *See Mastrobuono*, 514 U.S. at 62.

In response, Empire principally contends that the parties' actual intent was to carve out timeliness defenses from the Arbitration Clause given that the Choice of Law provision states that New York law will govern the "enforcement" of the agreement. (Empire Br. at 7–12.) In making this argument, Empire relies on two decisions from the New York Court of Appeals—*Smith Barney v. Luckie*, 85 N.Y.2d 193 (1995), and *Diamond Waterproofing v. 55 Liberty Owners*, 4 N.Y.3d 247 (2005)—which recognized the rule that "threshold Statute of Limitations

---

³ In *Bechtel*, the Second Circuit addressed a similarly worded arbitration agreement that also contained a procedural rule provision, which stated that New York law would govern the "procedure and administration of any arbitration[.]" 638 F.3d at 154. The court observed that these two provisions created ambiguity as to whether the timeliness defense at issue was arbitrable. *Id.* But, in applying the FAA's pro-arbitration policy, the court resolved the ambiguity issue in favor of arbitration. *Id.* The instant case is easier than *Bechtel*: the Arbitration Clause contains a procedural rule provision that states that FINRA rules will govern the procedure and administration of any arbitration proceedings. (Customer Agreement, at 7.) Hence, the interpretive ambiguity created by the procedural rule provision in *Bechtel* is absent here. 638 F.3d at 154.

7

questions are for the courts" where a choice of law provision states that it governs "both the agreement and its enforcement." *Diamond Waterproofing*, 4 N.Y.3d at 253. So here, because the Choice of Law provision subjects the "enforcement" of the parties' agreement to New York State law (Customer Agreement, at 6 ("[T]he interpretation and enforcement of the rights and duties of the parties will be governed by the laws of the State of New York")), Empire contends that this provision impliedly carves out its timeliness defense from arbitration. (Empire Br. at 7–12.)

Empire's argument, however, faces a steep uphill climb having already been rejected twice by the Second Circuit, *see, e.g.*, *Bechtel*, 638 F.3d at 158; *Bybyk*, 81 F.3d at 1200, and once by the Supreme Court, *see Mastrobuono*, 514 U.S. at 1219. Each of those cases held that choice of law provisions in arbitration agreements must be construed narrowly in light of the pro-arbitration federal policy reflected in the FAA. *See, e.g.*, *Mastrobuono*, 514 U.S. at 1219 (refusing to read New York choice of law provision as "limiting the authority of arbitrators"); *Bechtel*, 638 F.3d at 158 ("[O]ur refusal to read the choice-of-law clause broadly in *Bybyk* was not based on our understanding of New York contract law, but rather on the requirements of federal arbitration law as articulated in *Mastrobuono*."). Thus, even if Empire is correct that New York law construes choice of law provisions in its favor, this Court is bound to apply Second Circuit and Supreme Court precedent—which have expressly declined to follow the New York Court of Appeals' construction of arbitration agreements in this respect. *See Bechtel*, 638 F.3d at 158; *Bybyk*, 81 F.3d at 1200. This argument must therefore be rejected.

Finally, Empire's resort to the Provisional Remedy Clause is unavailing. Recall that the Provisional Remedy Clause states that either party may make an application for "temporary or provisional relief or remedy" in the Southern District of New York or New York State Supreme

Court. (Customer Agreement, at 7.) Empire contends that this provision "instructs the Court to ignore the arbitration agreement, regardless of the breadth of it" and to adjudicate the merits of its statute of limitations defense. (Empire Br. at 15.)

Empire's requested remedy in this case, however, is *permanent* dismissal of Best's underlying claims, which is neither temporary nor provisional in nature. (*Id.* at 29–30.) And even if the Provisional Remedy Clause does in fact conflict with the inexorable command of the Arbitration Clause, *see supra* 6–7, the FAA requires any interpretive ambiguity to be resolved in favor of arbitration. *See, e.g., Bechtel*, 638 F.3d at 158; *Bybyk*, 81 F.3d at 1200. Therefore, the Court must conclude that Empire's statute of limitations defense is a question of law committed to the arbitrator, and not fit for resolution by this Court.

## CONCLUSION

Under *Katz v. Cellco Partnership*, 794 F.3d 341 (2d Cir. 2015), a district court must stay judicial proceedings pending arbitration "after all claims have been referred to arbitration and a stay [is] requested." *Id.* at 345. Here, however, neither party requests a stay of the judicial proceedings; instead, Empire requests only a stay of the underlying arbitration proceedings. Accordingly, because neither party has requested a stay of the federal action, *Katz* is inapplicable and this case is **DISMISSED** with prejudice.

The Clerk of Court is respectfully directed to terminate this case.

Dated: New York, New York  
      June 28, 2021

SO ORDERED

_____  
HONORABLE PAUL A. CROTTY  
United States District Judge